IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TRISTA K. TIDWELL                                              PLAINTIFF

V.                              NO. 09-1001

MICHAEL J. ASTRUE,
Commission of Social Security                                  DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Trista K. Tidwell, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income under Title XVI of the Social Security Act (the Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See U.S.C. §405(g).

**Procedural Background**

Plaintiff protectively filed her application for SSI on June 6, 2001, claiming that she had been unable to work due to her disabling condition since May 23, 2001. (Tr. 47-50). The Social Security Administration denied the claim initially and upon reconsideration. (Tr. 24-36). Pursuant to Plaintiff's request, a hearing was first held on June 26, 2003, before Administrative Law Judge (ALJ) Don R. Rebsamen, where Plaintiff, her mother and Keith Morelock, a Vocational Expert (VE), appeared and testified. (Tr. 352-374). On February 26, 2004, the ALJ entered his decision denying Plaintiff's request for a determination of disability. (Tr. 9-21). Plaintiff's request for a review of the hearing was denied by the Appeals Council on June 25, 2004. (Tr. 4-6). On November 22, 2005, in a Memorandum Opinion, this matter was reversed and remanded by the Honorable Magistrate

Judge Bobby Shepherd. (Tr. 419-427). Upon remand, a second hearing was held on March 23, 2006, before ALJ Bob Neighbors, and on July 22, 2006, the ALJ entered a decision, denying benefits. ( Tr. 400-410, 432-440 ). The Appeals Council reviewed the ALJ's decision, concluded he did not properly assess the case in accordance with the instructions given by the Magistrate Judge, and on November 16, 2007, remanded the matter again to the ALJ for further findings. (Tr. 442-446). On January 28, 2008, a third hearing was held before ALJ John H. Goree, where testimony was again received from Plaintiff and VE Tyra Watts. The ALJ issued his unfavorable decision on March 15, 2008. (Tr. 380-394). On November 14, 2008, the Appeals Council denied review, (Tr. 375-377) and the matter is now before the undersigned.

In the March 15, 2008 decision, the ALJ found that Plaintiff had the following severe combination of impairments: lupus; fibromyalgia; glaucoma; headaches; and anemia. (Tr. 385). He further found that Plaintiff's depression did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore non-severe; that she had not regularly sought treatment; had no limitation in her activities of daily living, social functioning, concentration, persistence or pace and had no episode of decompensation. (Tr. 386). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. He concluded that she had the RFC to perform light work, but would require work that was simple and unskilled or semi-skilled in nature, where the tasks and work performed were learned by rote, where she could understand, carry out and remember concrete instructions and where contact with supervisors, co-workers and the public was superficial. (Tr. 387). He found that Plaintiff would not be able to perform any past relevant work but that there were jobs in the national economy Plaintiff could perform. (Tr. 393-394).

**Evidence Presented**

The record in the present case is extensive. In his Memorandum Opinion dated November 22, 2005, Magistrate Judge Bobby E. Shepherd recited numerous transcript pages substantiating Plaintiff's diagnosis and subjective allegations and nonexertional limitations. (Tr. 419-427). There was no question then, and there is no question now, that Plaintiff suffers from numerous impairments, some of which are: Systemic lupus erythematosus; fibromyalgia; glaucoma; headaches and anemia. The undersigned has also conducted a thorough review of the 597 page transcript, which includes not only medical evidence, but also the transcripts of three separate hearings held before three different ALJ's and three separate ALJ decisions.

Magistrate Judge Shepherd stated that although Plaintiff had numerous treating physicians, none of them provided a residual functional assessment of Plaintiff's capabilities. (Tr. 427). Judge Shepherd reversed and remanded the matter for "reconsideration of the plaintiff's residual functional capacity, with particular attention to be paid to the combined effect of plaintiff's numerous impairments." (Tr. 427). Since the date of that Memorandum Opinion, although Plaintiff continued to seek treatment from various treating physicians, (Tr. 544, 526, 525, 529, 524, 469-471), no RFC Assessments were ever obtained from Plaintiff's treating physicians or by a consultative examining physician. Instead, the only Mental and Physical RFC Assessments in the record were those completed by two non-examining doctors in 2001. (Tr. 246-253 and 256-259). A consultative mental exam was completed by Dr. Janet L'Abbe in 2001. Although the ALJ at one point relied upon Dr. Janet L'Abbe's report where she observed no limitations in Plaintiff's concentration, persistence and pace, the ALJ failed to address Dr. L'Abbe's statement wherein she stated:

> It is possible that with more consistent treatment that she [would] be able to significantly

reduce the symptoms of depression however, it is unlikely that her Pain Disorder will improve, given the chronicity of her Lupus and Fibromyalgia.

(Tr. 243). In addition, although there was evidence in the record that Plaintiff's lupus and pain conditions were stable on March 21, 2006, (Tr. 544) it does not automatically follow that Plaintiff would be capable of performing certain activities consistent with certain levels of work. In a case such as this, the undersigned believes the ALJ was obligated to contact one of Plaintiff's treating physicians for an assessment of how Plaintiff's impairments limited her ability to engage in work-related activities. See Bowman v. Barnhart, 310 F.3d 1080, 1085 (8th Cir. 2002). Instead of developing the record from Plaintiff's treating physicians in assessing Plaintiff's residual functional capacity, the ALJ improperly relied on the reports of two non-examining physicians. Such opinions of doctors who have not examined Plaintiff ordinarily do not constitute substantial evidence on the record as a whole. Id., citing Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).[1] Furthermore, although Plaintiff's lupus may have been controlled by medication, this one notation, as was the case in Bowman, is not substantial evidence that Plaintiff's systemic lupus was controlled at all times during her insured status.

> Systemic lupus is 'a chronic, remitting, relapsing, inflammatory, and often febrile multisystemic disorder of connective tissue.' Kelley v. Callahan, 133 F.3d 583, 585 n. 1 (8th Cir. 1998)(internal quotation omitted). In other words, the symptoms of systemic lupus, such as pain and swelling, can flare-up, subside, and flare-up again. ...

Id. at 1083-1084.

The court also recognizes that Plaintiff's own testimony indicated that she participated in

---

[1] The court recognizes that the Eighth Circuit distinguished the Nevland case in Casey v. Astrue, 503 F.3d 687, 697 (8th Cir. 2007), holding that Nevland did not preclude the ALJ's reliance on a reviewing physician's report at step four when the burden is on the claimant to establish an inability to do past relevant work. However, in Casey, one of the claimant's treating physicians completed a RFC Questionnaire. Id. at 692.

daily activities that might not be suggestive of a disabling condition. However, Plaintiff also testified that she had six out of seven bad days per week, and her ability to perform certain activities on the one good day was not inconsistent with her testimony that on bad days, she did not do anything, that she hurt all over and had constant headaches. (Tr. 589). See Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000)("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work"). Plaintiff also expressed her bouts with pain to several doctors regarding her fibromyalgia for several years. "Fibromyalgia is a common nonarticular disorder of unknown cause characterized by achy pain, tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft tissues. Diagnosis is clinical. Treatment includes exercise, local heat, and drugs for pain and sleep." See The Merck Manual, p. 321 (18th Edition, 2006).

> In fibromyalgia, symptoms and signs are more generalized, and there is no specific histologic abnormality. It sometimes occurs in patients with systemic rheumatic disorders, which complicates the diagnosis. ...
> Stiffness and pain in fibromyalgia frequently begin gradually, diffusely and with an achy quality. Symptoms can be exacerbated by environmental or emotional stress, poor sleep, trauma, exposure to dampness or cold, or by a physician who gives the patient the incorrect message that it is "all in the head." Patients tend to be stressed, tense, anxious, fatigued, striving, and sometimes depressed. Many patients also have irritable bowel symptoms or tension headaches.
> Fibromyalgia is suspected in patients with generalized pain and tenderness, especially disproportionate to the physical findings; with negative laboratory results despite widespread symptoms; or when fatigue is the predominant symptom. ...The diagnosis is supported by explicit tender points and other findings, which comprise diagnostic criteria....Chronic fatigue syndrome can cause similar generalized myalgias. ...

Id. The Eighth Circuit Court of Appeals has recognized that fibromyalgia is a chronic condition which is difficult to diagnose and may be disabling. Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007), citing Garza v. Barnhart, 397 F.3d 1087, 1089 (8th Cir. 2005) (per curiam).

The undersigned recognizes that this matter has gone on for several years and is therefore reluctant to again remand this matter. However, since the court believes the ALJ has still not fully developed the record in accordance with what was no doubt contemplated by the prior remand order, and in accordance with relevant case law, the court believes it is necessary to once again remand this matter to the ALJ, with specific instructions to obtain Mental and Physical RFC Assessments from Plaintiff's treating physicians, or, if RFC assessments cannot be obtained from Plaintiff's treating physicians, they should be obtained from consultative examining physicians. The ALJ should then determine Plaintiff's RFC in light of those assessments.

Based upon the foregoing, having carefully reviewed the record, the undersigned recommends that this matter be reversed and remanded, pursuant to sentence four of 42 U.S.C. §405(g), directing the ALJ to further develop the record in accordance with the instructions in this report and recommendation.

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Entered this 5th day of February, 2010.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE